IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


PETER L. FESKENS,                              10-CV-107-BR

      Plaintiff,

                               OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

      Defendant.

MERRILL SCHNEIDER
Schneider Law Offices
P.O. Box 14490
Portland, OR 97293
(503) 255-9092

      Attorneys for Plaintiff

DWIGHT C. HOLTON
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

1  -  OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**TERRYE ERIN SHEA**
Special Assistants United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2143

             Attorneys for Defendant


**BROWN, Judge.**

      Plaintiff Peter L. Feskens seeks judicial review of a final

decision of the Commissioner of the Social Security

Administration (SSA) in which he denied Plaintiff's application

for Disability Insurance Benefits (DIB) under Title II of the

Social Security Act.  This Court has jurisdiction to review the

Commissioner's decision pursuant to 42 U.S.C. § 405(g).

      For the reasons that follow, the Court **REVERSES** the decision

of the Commissioner and **REMANDS** this matter pursuant to sentence

four of 42 U.S.C. § 405(g) for the immediate calculation and

award of benefits.


### ADMINISTRATIVE HISTORY

      This matter is now nearly fifteen years old and has a record

that is nearly 1,000 pages.  Plaintiff filed his initial


2  -  OPINION AND ORDER

application for DIB on April 18, 1996.  Tr. 483, 504-06.[1]  His
application was denied initially and on reconsideration.
Tr. 767.  An Administrative Law Judge (ALJ) held a hearing on
December 9, 1997.  Tr. 316-406.  Plaintiff was represented by an
attorney at the hearing.  Tr. 316.  Plaintiff; Plaintiff's mental
health counselor, Delana Beaton, M.A.; two Medical Experts (ME);
and a Vocational Expert (VE) testified.  Tr. 316-406.

An ALJ issued an opinion on March 14, 1998, and found
Plaintiff was not disabled and, therefore, was not entitled to
benefits.  Tr. 767-78.  The Appeals Council vacated the ALJ's
decision on September 23, 1999, and remanded the matter for
further proceedings consistent with its order.  Tr. 787-90.
Accordingly, an ALJ held another hearing on June 15, 2000, at
which Plaintiff was represented by an attorney.  Tr. 259-315.
Plaintiff; examining psychologist, Robert Kruger, Ph.D.; and a VE
testified at the hearing.  Tr. 259-315.

An ALJ issued a second opinion on September 19, 2000, and
again found Plaintiff was not disabled and, therefore, was not
entitled to benefits.  Tr. 44-57.  That decision became the final
decision of the Commissioner on September 25, 2002, when the
Appeals Council denied Plaintiff's request for review.  Tr. 459-
60.

---

[1] Citations to the official transcript of record filed by the
Commissioner on June 10, 2010, are referred to as "Tr."

On October 31, 2000, Plaintiff filed a new application for DIB alleging a disability onset date of September 1, 2000, which was denied initially and on reconsideration. Tr. 72-79, 88-89. An ALJ held a hearing on January 8, 2003, at which Plaintiff was represented by an attorney. Tr. 241-58. Plaintiff and a VE testified at the hearing. Tr. 241-58. An ALJ issued an opinion on February 27, 2003, in which he found the decision on September 19, 2000, was binding for the period between March 3, 1996, and September 19, 2000. Tr. 24-32. The ALJ found Plaintiff was not disabled for the period after September 19, 2000, through Plaintiff's date last insured on December 31, 2001, and, therefore, was not entitled to benefits. Tr. 24-32. That decision became the final decision of the Commissioner on April 6, 2004, when the Appeals Council denied Plaintiff's request for review. Tr. 9-11.

On June 3, 2004, Plaintiff sought review of the Commissioner's decision in the District Court for the District of Oregon. The Court remanded the matter on November 4, 2005, for further administrative proceedings. Tr. 898-905.

An ALJ held another hearing on July 26, 2006, at which Plaintiff was represented by an attorney. Tr. 968-81. Although Plaintiff did not testify, his counsel made a statement on his behalf. Tr. 968-81. The ALJ issued an opinion on September 15, 2006, and found Plaintiff was not disabled and, therefore, was

not entitled to benefits.  Tr. 897A-897P.  On April 14, 2007, the
Appeals Council vacated the ALJ's decision and remanded the
matter to a different ALJ for further proceedings consistent with
its order.  Tr. 938-40.

An ALJ held another hearing on December 3, 2007, at which
Plaintiff was represented by an attorney.  Tr. 982-87.[2]
Plaintiff was not present and his counsel agreed no further
testimony was required.  Tr. 982-97.  On May 9, 2008, the ALJ
issued an opinion and found Plaintiff was not disabled and,
therefore, was not entitled to benefits before his date last
insured.  Tr. 425-41.  That decision became the final decision of
the Commissioner on November 30, 2009, when the Appeals Council
denied Plaintiff's request for review.  Tr. 407-09.

On February 2, 2010, Plaintiff filed his Complaint seeking
review of the Commissioner's decision by this Court.

## BACKGROUND

Plaintiff was fifty-one years old at the time of the most
recent hearing.  Tr. 504, 982.  Plaintiff did not finish high
school or obtain a high-school equivalency degree.  Tr. 522.  He

---

[2] The Commissioner neglected to promptly file the
Supplemental Administrative record that contains the transcript
of the December 3, 2007 hearing before the ALJ, which represents
pages 982-97 of the record.  It was filed at the Court's request
on April 5, 2011.  Although Plaintiff may not have had access to
the transcript in the supplement, the Court did not find any part
of that record to be useful in its review of the ALJ's decision.

5  -  OPINION AND ORDER

has performed past work as a security guard.  Tr. 254.  Plaintiff alleges a disability onset date of September 1, 2000.  Tr. 88.

On March 10, 1996, Plaintiff suffered a massive myocardial infarction that left him with reduced left-ventricle function and poor exercise tolerance.  Tr. 680-81.  Plaintiff has been diagnosed with ischemia, severe coronary artery disease, hypertension, chest pain due to angina, anoxic brain insult, diabetes, peripheral neuropathy, chronic fatigue, and bursitis in both shoulders.   Tr. 189, 200-01, 206, 594, 652, 852, 857-58, 875, 967.

Plaintiff also has been diagnosed with psychological impairments including major depressive disorder, borderline intellectual functioning, post-traumatic stress disorder, and personality and affective disorders.  Tr. 140-41, 192, 674, 751-52, 880.

Plaintiff alleges he is disabled due to an inability to perform many daily activities due to extreme exercise intolerance; chronic fatigue that forces him to take daily naps; difficulty with memory and concentration due to cognitive deficits; and pain in his chest, neck, shoulders, and feet that limits his ability to stand, to walk, to lift, to carry, and to sit.  Tr.  96-119.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After reviewing the medical

records, the Court adopts the ALJ's summary of the medical evidence. *See* Tr. 428-32.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

## I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 404.1520(a)(4)(I).

8  -  OPINION AND ORDER

In Step Two, the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments. *Stout*, 454 F.3d
at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity. *Stout*, 454
F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(iii). The
criteria for the listed impairments, known as Listings, are
enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed
Impairments).

If the Commissioner proceeds beyond Step Three, he must
assess the claimant's residual functional capacity (RFC). The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations. 20 C.F.R.
§ 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. A
'regular and continuing basis' means 8 hours a day, for 5 days a
week, or an equivalent schedule." SSR 96-8p, at *1. In other
words, the Social Security Act does not require complete
incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284
n.7 (9th Cir. 1996). The assessment of a claimant's RFC is at
the heart of Steps Four and Five of the sequential analysis

engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One, the ALJ found Plaintiff did not engage in

substantial gainful activity between September 1, 2000, and
December 31, 2001, his date last insured.  Tr. 428.

At Step Two, the ALJ found Plaintiff has the following
severe impairments:  diabetes with peripheral neuropathy, chronic
heart disease status post-myocardial infarction, obesity,
depression, post-traumatic stress disorder, personality disorder,
borderline intellectual functioning, ongoing alcohol abuse, and
polysubstance abuse in remission.  Tr. 428.

At Step Three, the ALJ found Plaintiff does not have an
impairment or combination of impairments that meets or medically
equals a Listed Impairment in 20 C.F.R. Part 404, Subpart P,
Appendix 1, through his date last insured.  Tr. 1137.  The ALJ
found Plaintiff has the RFC to

> lift and carry ten pounds occasionally and
> less than ten pounds frequently.  During an
> eight-hour day, he can sit for up to six
> hours and stand or walk for up to two hours.
> Furthermore, he must not use ladders, ropes
> or scaffolds, and is limited to only
> occasional climbing, balancing, stooping,
> kneeling, crouching and crawling.  Finally,
> the claimant is limited to simple, routine,
> repetitive work, requiring only occasional
> interaction with co-workers and the public.

Tr. 433.

At Step Four, the ALJ concluded Plaintiff is unable to
perform any of his past relevant work.  Tr. 439.

At Step Five, the ALJ concluded Plaintiff has a sufficient
RFC to perform jobs that exist in significant numbers in the

11 -  OPINION AND ORDER

national economy.  Tr. 440.  Specifically, the ALJ found
Plaintiff has the ability to perform jobs that require sedentary
work such as small-products assembler, sporting-goods assembler,
and microfilmer.[3]  Tr. 440-41.  Thus, the ALJ concluded Plaintiff
is not disabled and, therefore, is not entitled to Social
Security benefits.


## DISCUSSION

Plaintiff contends the ALJ erred by improperly discrediting
the medical opinions of Plaintiff's treating physician, John
Fitzgerald, M.D.; treating physician James P. Lowry, M.D.;
treating physician, William A. Moreno, M.D.; examining physician,
James E. Devorss, M.D.; and examining physician, Daniel J.
Bailly, M.D.  Plaintiff also contends the ALJ erred by
(1) improperly discrediting Plaintiff's testimony as to the
intensity, persistence, and limiting effect of Plaintiff's
symptoms and (2) failing to include all of Plaintiff's functional
limitations in formulating the hypothetical posed to the VE.

**I.    ALJ's Reasons for Discrediting the Opinions of
        Drs. Fitzgerald, Lowry, Moreno, Devorss, and Bailly.**

Plaintiff contends the ALJ did not give legally sufficient

---

[3] The ALJ's Step Five determination is apparently based on
testimony given by the VE in the hearing before another ALJ on
January 8, 2003.  Tr. 254-57.  There was not any testimony by a
VE at the subsequent hearings on July 26, 2006, or December 3,
2007.

reasons for discrediting the opinions of Drs. Fitzgerald, Lowry, Moreno, Devorss, and Bailly.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007)(quoting *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Lester*, 81 F.3d at 830-32.  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician."  *Id.*

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate her reasons for doing so.  *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining

physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Id.* at 600.

**A.   Dr. Fitzgerald's Opinion.**

Dr. Fitzgerald was Plaintiff's treating physician for several years beginning in July 2000 and saw Plaintiff as often as three times per month.  Tr. 199-200, 206-32.  Dr. Fitzgerald diagnosed Plaintiff with and treated Plaintiff for diabetes, peripheral neuropathy, claudication, bursitis, and ongoing effects of Plaintiff's heart condition.  Tr. 199-200, 206-32.  In particular, Dr. Fitzgerald repeatedly noted Plaintiff's diabetes was very difficult to control.  Tr. 212-17, 224-32.

On December 31, 2002, at the request of Plaintiff's counsel, Dr. Fitzgerald provided his assessment of Plaintiff's medical conditions.  He found Plaintiff suffers from cyanotic feet, high blood pressure, congestive heart failure, and cognitive dysfunction in addition to diabetes, peripheral neuropathy, and claudication.  Tr. 235.  Dr. Fitzgerald opined Plaintiff is limited in his ability to perform work-related functions because of pain in his feet that limits his ability to walk, shortness of breath that results from his heart condition, depression, and cognitive deficits.  Tr. 235.  Dr. Fitzgerald noted Plaintiff's cognitive dysfunction and short-term memory deficits hamper his ability to control his diabetes and to perform more than simple, routine tasks.  Tr. 235.  Dr. Fitzgerald opined Plaintiff could

not sustain employment for 40 hours per week if he had to lift
more than five pounds frequently or more than ten pounds
occasionally, could not change positions as needed due to pain,
and did not have the option of elevating his foot.  Tr. 235.
Dr. Fitzgerald concluded Plaintiff would miss more than one day
per month due to health reasons.  Tr. 235.

On March 9, 2004, again at the request of Plaintiff's
counsel, Dr. Fitzgerald opined Plaintiff, as of his date last
insured on December 31, 2001, suffered from limitations similar
to those he described in December 2002.  Tr. 239.  As the bases
for his opinion that Plaintiff is "not medically able to work,"
Dr. Fitzgerald also relied on Plaintiff's admission to the
hospital for severe cardiac failure (which Dr. Fitzgerald does
not believe is likely to improve), chronic depression, difficult-
to-control diabetes, and peripheral neuropathy.  Tr. 235-36, 240.

### 1.    ALJ's Decision.

The ALJ concluded Dr. Fitzgerald's opinion that
Plaintiff suffered the limitations described as of Plaintiff's
date last insured could not be "afforded significant weight" on
four grounds:  (1) Dr. Fitzgerald's treatment notes do not
support the conclusion that Plaintiff suffered from peripheral
neuropathy before December 31, 2001; (2) Dr. Fitzgerald's
conclusion that Plaintiff suffered brain damage as a result of
his myocardial infarction is contradicted by the record; and

(3) the record contradicts Dr. Fitzgerald's assessment of
Plaintiff's "severe heart failure."  Tr. 438.

      **2.  Analysis.**

      The ALJ concluded Dr. Fitzgerald's treatment records
do not reflect Plaintiff suffered from peripheral neuropathy
before Plaintiff's date last insured on December 31, 2001.
Dr. Fitzgerald's treatment notes, however, indicate otherwise.
Although the ALJ points to a number of Dr. Fitzgerald's treatment
notes beginning in 2002 in which he records Plaintiff's reports
of pain in his feet and diagnoses peripheral neuropathy, there
are numerous records prior to Plaintiff's date last insured in
which Plaintiff complains of leg cramps from walking and numbness
in his feet.  *See* Tr. 220, 225-26.  Moreover, the ALJ does not
identify any medical evidence in the record that contradicts
Dr. Fitzgerald's statement that Plaintiff suffered from the
symptoms of peripheral neuropathy before December 31, 2001, nor
does the ALJ provide any basis to support his implication that
pain is the only symptom indicative of peripheral neuropathy.
Although the ALJ notes Plaintiff was not officially diagnosed
with peripheral neuropathy until early 2002, that alone is not
enough to undermine Dr. Fitzgerald's opinion as Plaintiff's
treating physician that Plaintiff suffered from before that time.

      The Court also notes a significant portion of this
record reflects attempts by Plaintiff's physicians to manage

Plaintiff's diabetes, which was diagnosed for the first time in late 2000.  Those records demonstrate Plaintiff suffered a number of complications from diabetes requiring close management by Dr. Fitzgerald.  Tr. 199-200, 206-32.  Thus, in light of the record as a whole, the ALJ's reliance on Dr. Fitzgerald's records beginning in 2002 is not a legally sufficient basis for rejecting Dr. Fitzgerald's medical opinion that Plaintiff suffered the impairments and limitations as he described in December 2002 before Plaintiff's date last insured.

As noted, the ALJ also found Dr. Fitzgerald's conclusion that Plaintiff suffered brain damage as a result of the lack of oxygen in the minutes following his heart attack in March 1996 is contradicted by the record.  On September 12, 2000, Dr. Fitzgerald noted Plaintiff suffered from anoxic brain syndrome.  Tr. 199.  The ALJ points to the treatment notes of Dr. Lowry from December 31, 2002, in which he stated Plaintiff, in fact, suffered "anoxic brain insult, with encephalopathy" from his myocardial infarction, but recovered "to a great extent." Tr. 201, 652.  This statement, however, does not undermine Dr. Fitzgerald's note that Plaintiff suffered a brain injury due to anoxia, which is corroborated by the report of Dr. Bailly at the time of Plaintiff's release from the hospital following his heart attack.  Tr. 591-95.  Moreover, both Drs. Lowry and Fitzgerald repeatedly note Plaintiff suffers from cognitive

deficits despite their lack of certainty as to the cause.
Tr. 201-02, 223, 225, 230, 235, 677.  In addition, Plaintiff's
cognitive dysfunction is supported by numerous psychological
examiners that conclude Plaintiff has borderline intellectual
functioning with impaired short-term memory, which even the ALJ
found to be severe.  Tr. 428, 751, 880-81, 891.  In light of the
record as a whole, the Court does not find Dr. Fitzgerald's
reference to Plaintiff's anoxic brain syndrome to be a sufficient
legal basis to discredit Dr. Fitzgerald's entire opinion.

        The ALJ also concluded Dr. Fitzgerald's assessment of
Plaintiff's "severe heart failure" is not supported by the
record.  Tr. 438.  On the basis of Dr. Lowry's treatment
notes, the ALJ determined Plaintiff suffered "a massive fluid
overload" that only required "the usual conventional heart
failure medical approach."  Tr. 438.  Dr. Lowry's treatment notes
from December 31, 2002, however, reveal Plaintiff has developed
"advanced heart failure manifested now and massive fluid
retention."  Tr. 202-03.  In fact, Dr. Lowry discussed the
possibility that Plaintiff would eventually require a heart
transplant, but he concluded he was hope[ful] the "conventional
heart failure medical approach" would succeed in stabilizing
Plaintiff.  Tr. 203-04.

    With the exception of these inconsistencies, the ALJ only
pointed to the opinion of a nonexamining Disability Determination

Services (DDS) physician[4] as contradicting Dr. Fitzgerald's opinion.  Tr. 438.  It is not clear from the ALJ's general reference to the "medical consultant . . . for the Agency" and the ALJ's citation to "Exhibit B-1F," "B-2F," and "B-3F" precisely which physician's opinion the ALJ references.  After an extensive review of the record, however, the Court concludes the ALJ has relied on the opinion of DDS physician, William Habjan, D.O.  Tr. 535-42.  In any event, the opinion of a nonexamining physician alone cannot constitute a sufficient basis for discrediting the opinion of a treating physician.  *Lester*, 81 F.3d at 831.

The Court, therefore, concludes on this record that the ALJ erred when he discredited Dr. Fitzgerald's opinion without providing legally sufficient reasons supported by substantial evidence in the record for doing so.

**B.   Dr. Lowry's Opinion.**

Dr. Lowry, Plaintiff's cardiologist, treated Plaintiff for cardiac arrest and myocardial infarction from March 10, 1996, to February 12, 1997.  Tr. 201.  On March 10, 1996, Dr. Lowry performed an angioplasty on Plaintiff and treated him during his recovery.  Tr. 201, 609-13.  Dr. Lowry again treated Plaintiff in

---

[4] Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a).

19 -  OPINION AND ORDER

December 2004 for his "advanced heart failure."    Tr. 203.

On May 22, 1996, Dr. Lowry noted Plaintiff's severe depression, his markedly reduced cardiac reserve, his reduced ventricular function, and his poor exercise tolerance as demonstrated by an exercise test performed on April 10, 1996. Tr. 680. Dr. Lowry concluded at that time that Plaintiff was incapable of returning to work as a security guard and found "[i]f [Plaintiff] can do any kind of work at all, it would have to be completely sedentary work." Tr. 680.

On February 24, 2000, Dr. Lowry responded to a request from the SSA to assess Plaintiff's ability to perform work-related activities. Tr. 870-74. Dr. Lowry responded that Plaintiff is "unable to do work because of several factors, primarily his heart disease, but also depression and a possible learning disorder." Tr. 870. Dr. Lowry specifically stated:

> I have attempted to answer the questions on your medical assessment form, but I find this very difficult to do in any sort of objective way. I really have no good means of telling how long an individual like this can sit, stand, or walk but having known him and his medical condition, I doubt that he is able to work in any sort of capacity, unless some kind of employment can be found for him that is totally sedentary.

Tr. 870. Dr. Lowry concluded Plaintiff is "totally disabled, permanently." Tr. 870. Dr. Lowry assessed Plaintiff with the following RFC: able to lift 10 pounds occasionally; unable to carry any weight; able to sit for four hours in an eight-hour

20 -  OPINION AND ORDER

work day; unable to stand or to walk for any length of time;
unable to climb, stoop, balance, crouch, kneel, or crawl; unable
to push or pull; able to reach, handle and feel occasionally; and
unable to move machinery, to work with chemicals, to be exposed
to dust, or to be exposed to extreme temperatures.  Tr. 871-74.

On June 20, 2000, Dr. Lowry clarified his letter of
February 24, 2000.  Tr. 896-97.  Dr. Lowry reiterated his opinion
that Plaintiff is totally and permanently disabled based on both
subjective and objective data including exercise tolerance tests,
heart catheterization, and an echocardiogram that shows "most of
the anterior wall of [Plaintiff's] heart and a substantial region
of the inferior wall were permanently damaged."  Tr. 896-97.
Dr. Lowry repeated Plaintiff's classification as a Functional
Class III Cardiac Impairment (indicating a patient with "marked
limitations on physical activity" who experiences symptoms "even
with milder forms of physical activity").  Tr. 855, 897.  In
particular, Dr. Lowry noted Plaintiff's need to take naps
regularly.  Tr. 897.  Dr. Lowry reiterated cardiological
assessments "do not translate directly" into the particular
elements of Plaintiff's RFC that were the focus of the SSA's
request.  Tr. 897.  Despite this admission, Dr. Lowry concluded:
"I have seen numerous patients in my practice who apparently have
obtained such benefits already who appear to me far less disabled
than Mr. Feskens."  Tr. 897.

21 -  OPINION AND ORDER

### 1.   ALJ's Decision.

The ALJ discredited Dr. Lowry's opinion on four grounds:  (1) Dr. Lowry admitted he did not have an objective basis for assessing Plaintiff's RFC, (2) Dr. Lowry did not establish what he meant by "totally sedentary" employment, (3) Dr. Lowry's assessment occurred three years after his last treatment of Plaintiff, and (4) Dr. Lowry's medical opinion is undermined by his advocacy for Plaintiff.  Tr. 435-36.  The ALJ, therefore, gave "moderate weight" to Dr. Lowry's assessment of Plaintiff's RFC and rejected Dr. Lowry's opinion that Plaintiff could not engage in any work.  Tr. 436.

### 2.   Analysis.

As with the opinion of Dr. Fitzgerald, the record reveals the opinion of a nonexamining DDS physician is the only medical evidence considered by the ALJ that contradicts Dr. Lowry's assessment.  Tr. 438.  As noted, "a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record." *Lingenfelter*, 504 F.3d at 1038 n.10. "When a nontreating physician's opinion contradicts that of the treating physician-but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician-the opinion of the treating physician may be rejected only if the ALJ gives 'specific, legitimate reasons for

doing so that are based on substantial evidence in the record.'"
*Morgan,* 169 F.3d at 600 (quoting *Andrews v. Shalala*, 53 F.3d
1035, 1041 (9th Cir. 1995)).  The ALJ must "give weight not only
to the treating physician's clinical findings and interpretation
of test results, but also to [their] subjective judgments."
*Lester*, 81 F.3d at 832-33.  The Court notes Plaintiff's
relationship with Dr. Lowry as his treating physician makes
Dr. Lowry "especially qualified to evaluate reports from
examining doctors, to integrate the medical information they
provide, and to form an overall conclusion as to functional
capacities and limitations, as well as to prescribe or approve
the overall course of treatment."  *Id*. at 833.

        Although Dr. Lowry admits he did not have a precise way
to measure Plaintiff's RFC, he clarified in his letter of June
20, 2000, that his assessment is based on both his subjective
judgments and Plaintiff's objective medical records.  Tr. 896-97.
In addition, the opinion of the DDS physician as to Plaintiff's
RFC is not based on any objective testing of Plaintiff's physical
capability or a physical examination of Plaintiff.  In fact, the
record does not contain any objective testing of Plaintiff's
physical capacity beyond the exercise tolerance tests relied on
by Dr. Lowry.  Ultimately   Dr. Lowry's reliance on the
objective cardiology tests and his opinion of Plaintiff's
physical capacity based on his long-term treating relationship

with Plaintiff is more persuasive and must be given greater
weight than the opinion of a nonexamining DDS physician.
Tr. 535-42.  *See Lingenfelter*, 504 F.3d at 1038 n.10.

        The ALJ also discredits Dr. Lowry's opinion on the
ground that Dr. Lowry did not clarify what he meant when he
restricted Plaintiff to work that is "totally sedentary."
Tr. 435.  Yet, as noted, Dr. Lowry set out in detail his
assessment of Plaintiff's RFC on the basis of the objective
medical evidence and his subjective observations of Plaintiff.
Tr. 871-74.  For example, Dr. Lowry concluded Plaintiff's
impairments render him unable to sit or to stand for a full
eight-hour workday due to his severe cardiac impairment, exercise
intolerance, fatigue, and a regular need to take naps.  Tr. 871-
74, 896-97.  Although the ALJ criticizes Dr. Lowry's assessment
of Plaintiff's RFC on the ground that it describes "a person who
is virtually bedridden," the Court does not find that argument
persuasive.  The ALJ vaguely references "other substantial
evidence in the record" inconsistent with Dr. Lowry's assessment,
but does not specifically identify any such evidence.  Although
the ALJ summarizes Plaintiff's activities of daily living
elsewhere in his opinion, he does not set out any activities that
suggest anything more than an ability to do limited daily
activities.  Tr. 433.  *See also Smolen*, 80 F.3d at 1284 n.7
(complete incapacity not required to demonstrate disability);

*Lester*, 81 F.3d at 833 (sporadic ability to do work is not inconsistent with disability).  Ultimately the ALJ must assess Plaintiff's ability to *sustain* employment on a regular and continuing basis.  20 C.F.R. § 404.1520(e).

The ALJ also discredits Dr. Lowry's opinion on the ground that Dr. Lowry's opinion in February 2000 was formed three years after Dr. Lowry last treated Plaintiff.  That reason alone, however, is not a persuasive basis to reject Dr. Lowry's opinion. As noted, Dr. Lowry relied on his subjective assessment of Plaintiff as well as objective medical evidence.  Tr. 870-74, 896-97.  In addition, Dr. Lowry again treated Plaintiff for heart failure in December 2002 and confirmed his opinion that Plaintiff's heart condition is severe and had developed into "advanced heart failure" that might require a heart transplant. Tr. 201-04.  In light of the record as a whole, the Court concludes the fact that Dr. Lowry had not treated Plaintiff for three years when he gave his assessment in 2000 that Plaintiff has a severe, permanent heart condition that severely limits his functional capacity is not a basis for discrediting Dr. Lowry's opinion.

Finally, the ALJ discredits Dr. Lowry's opinion on the ground that Dr. Lowry has overstepped the line between care provider and advocate.  The ALJ reached this conclusion on the basis of Dr. Lowry's "willingness to consider the claimant

disabled early in his treatment," which "departs substantially
from the objective evidence of record." Tr. 436. The ALJ,
however, does not identify such "objective evidence of record."
The record reflects Dr. Lowry sought consultation with other
physicians during Plaintiff's recovery from his heart attack,
ordered cardiac catheterization and an echocardiogram, and
followed up with exercise tolerance testing. Tr. 604-44. The
treatment records also reflect Dr. Lowry concluded Plaintiff may
at some point be able to return to work, but ultimately concluded
on the basis of the medical tests that Plaintiff could not return
to his former work as a security guard and could, at best,
perform work that was totally sedentary. Tr. 678-91. The Court
does not find any basis in this record to conclude that Dr. Lowry
has overstated the nature of Plaintiff's limitations or based his
opinion on something other than his professional assessment.
Furthermore, the record does not contain any contrary objective
medical evidence, and, moreover, Plaintiff's treating physicians
each declared Plaintiff disabled due to his heart condition:
*e.g.,* Dr. Lowry (Tr. 680-81, 870-74, 896-97); Dr. Fitzgerald
(Tr. 235-36, 239-40); Dr. Moreno (Tr. 875-76); Harvey B. Price,
M.D. (Tr. 719); and Gregory A. Lackides, M.D. (Tr. 967).

On this record, therefore, the Court concludes the ALJ erred
when he failed to provide legally sufficient reasons supported by
substantial evidence in the record for discrediting the opinion

of Dr. Lowry, Plaintiff's treating cardiologist.

**C.    Dr. Moreno's Opinion.**

Dr. Moreno treated Plaintiff for nearly two years from 1998 to 2000 for depression, hypertension, and severe coronary artery disease.  Tr. 875-76.  In the course of his treatment, Dr. Moreno classified the severity of Plaintiff's heart disease as a Functional Class III Cardiac Impairment under the New York Heart Association (NYHA) guidelines.  Tr. 855.  Class III indicates a patient has "cardiac disease and with marked limitation of physical activity.  They are comfortable at rest but experience symptoms with the milder forms of ordinary activity."  Tr. 855.  Dr. Moreno also classified Plaintiff as a Therapeutic Class C, which indicates a patient with "cardiac disease whose ordinary physical activity should be moderately restricted and whose more strenuous efforts should be discontinued."  Tr. 855.  Dr. Moreno also classified Plaintiff's mental impairments as "Class 4," which indicates a patient is "unable to engage in stress situations or engage in interpersonal relations (marked limitations)."  Tr. 856.

On November 16, 1999, Dr. Moreno issued a letter to the DDS Vocational Rehabilitation Division in which he opined Plaintiff's functional capacity was "essentially normal . . . except at his capacity to perform strenuous activities, which are apparently quite limited."  Tr. 848.  Dr. Moreno, however, opined:  "I do

27 -  OPINION AND ORDER

believe his overall ability to be involved in remunerative employment is not very encouraging." Tr. 848.

On March 14, 2000, Dr. Moreno issued a letter to the SSA in which he declined to fill out an RFC form but repeated his classifications of Plaintiff's capacity based on the NYHA guidelines. Tr. 875-76. Dr. Moreno concluded Plaintiff's "disability is permanent and . . . I don't believe that it is appropriate to recommend vocational counseling and/or training." Tr. 876.

### 1. ALJ's Decision.

The ALJ did not clearly set out the weight he gave to Dr. Moreno's opinion. Tr. 436-37. The ALJ emphasized Dr. Moreno's statement that Plaintiff's physical RFC was "essentially normal" and noted it contradicts Dr. Moreno's conclusions. Tr. 437. The ALJ, however, discredited Dr. Moreno's opinion because: (1) his reliance on the NYHA "Class III" is inaccurate and inconsistent with the record, (2) Dr. Moreno's opinion of Plaintiff's mental condition is outside his area of expertise, and (3) Dr. Moreno's ultimate conclusion that Plaintiff's "overall ability to be involved in remunerative employment is not very encouraging" was too vague to be of use.

### 2. Analysis.

The ALJ notes a seeming contradiction between

28 -  OPINION AND ORDER

Dr. Moreno's conclusion that Plaintiff's RFC is essentially
normal (with the exception of the strenuous activities that
Plaintiff cannot perform) and Dr. Moreno's opinion that Plaintiff
is permanently disabled. Tr. 436-37. It is clear from the
record, however, that Dr. Moreno's opinion is based on more than
his assessment of Plaintiff's physical abilities and takes into
account his lack of stamina, depression, and inability to manage
stressful situations. Tr. 848-60. Although the letter of
November 16, 1999, could be viewed as internally inconsistent
standing alone, Dr. Moreno's statement that Plaintiff's RFC is
"essentially normal" is not inconsistent with his opinion that
Plaintiff is disabled when viewed in light of Dr. Moreno's other
records and in light of this record as a whole (particularly the
opinions of Drs. Lowry and Fitzgerald). In any event, the Court
finds the opinions of Drs. Lowry and Fitzgerald to be most
persuasive on the issue of Plaintiff's disability and concludes
Dr. Moreno's opinion is consistent with their opinions.

        The ALJ also criticizes Dr. Moreno's reliance on the
NYHA's Classification System. Tr. 436. The ALJ criticizes the
NYHA rating system for only providing for "slight" or "marked"
limitations rather than having a class that denotes a "moderate"
limitation. Tr. 436. The ALJ, therefore, gives greater weight
to Dr. Moreno's "Therapeutic Classification C" representing
Plaintiff's more "moderate" limitations. Tr. 436. Although the

29 -  OPINION AND ORDER

ALJ concluded the record does not support "marked" limitations,
he does not identify any evidence in the record beyond the
opinion of a nonexamining DDS physician to support his
conclusion.  Tr. 436-37.

        The ALJ also asserts Dr. Moreno's conclusions about
Plaintiff's mental-health limitations are not deserving of any
weight because those opinions are outside of his area of
expertise.  Tr. 436-37.  The ALJ, however, does not point to any
evidence in the record that suggests Dr. Moreno does not treat
mental impairments.  It is clear from this record that Dr. Moreno
was treating Plaintiff's depression, prescribing varying doses of
Zoloft and other related medications, and was addressing
Plaintiffs' "emotional, mental, and physical well-being"
throughout their relationship.  Tr. 848.  On this record, the
Court does not have any basis to discredit Dr. Moreno's opinion
on this ground.

        The ALJ also concludes Dr. Moreno's opinion that
Plaintiff's "overall ability to be involved in remunerative
employment is not very encouraging" is too vague to be of use.
Tr. 436-37.  The Court agrees.  When Dr. Moreno's treatment
records and opinion letters are considered as a whole, however,
and in light of the entire record, Dr. Moreno's opinion is
consistent with those of Drs. Fitzgerald and Lowry that Plaintiff
suffers from severe heart disease that significantly limits his

ability to perform even mild physical activity.  Thus, the Court does not find this to be a sufficient basis to discredit Dr. Moreno's opinion.

To the extent the ALJ discredited Dr. Moreno's opinions on the ground that they are inconsistent, are based on inappropriate or unsupported classifications under the NYHA system, or are outside of his area of expertise, the Court concludes the ALJ erred because he did not give legally sufficient reasons supported by substantial evidence in the record for doing so.

Although Plaintiff alleges the ALJ erred in other ways, the Court need not address those arguments in light of its conclusion that the ALJ erred when he discredited Plaintiff's treating physicians.


**REMAND**

Having found the ALJ erred when he improperly discredited the opinions of Drs. Fitzgerald, Lowry, and Moreno, the Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *Id.* at 1179.  The court may "direct an award of benefits where the record has been fully

developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

Because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for discrediting the opinions of Drs. Fitzgerald, Lowry, and Moreno, the Court credits those opinions as true. *See Benecke v. Barnhart,* 379 F.3d 587, 594 (9th Cir. 2004)(when "the ALJ fail[s] to provide legally sufficient reasons for rejecting . . . [a] physician['s] opinion[]," the court credits that opinion as true). *See also Lester*, 81 F.3d at 834 (improperly-rejected physician opinion is credited as a matter of law).

When credited, the medical opinions establish that during

32 -  OPINION AND ORDER

the relevant period Plaintiff suffered from severe heart disease,
difficult-to-control diabetes, depression, borderline
intellectual functioning, peripheral neuropathy, and hypertension
that rendered him extremely fatigued to such an extent that he
must take regular naps, is significantly limited in the
performance of even mild physical activity, and would be required
to miss more than one day of work per month.  At the hearing
before the ALJ on June 15, 2000, the VE attested a claimant who
required naps outside of the normal break schedule would not be
able to sustain competitive employment in sedentary, unskilled
positions.  Tr. 313.  At the hearing before the ALJ on January 8,
2003, the VE also attested a claimant who missed more than one
day of work per month would not be able to sustain competitive
employment.  Tr. 255.  The record, therefore, reflects
Plaintiff's impairments render him unable to work on a regular
and continuing basis for "8 hours a day, for 5 days a week, or an
equivalent schedule."  *See* SSR 96-8p, at *1.

Accordingly, the Court concludes on this record that
Plaintiff cannot sustain work-related physical activities on a
regular and continuing basis and, therefore, was disabled and
entitled to benefits for the relevant period.  Thus, the Court
finds additional proceedings would be futile.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this 7th day of April, 2011.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge